**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Dated: July 1 2022

Mary Ann Whipple
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 20-31036 |
| | ) | |
| Todd M. Blackmar and | ) | Chapter 7 |
| Amy Blackmar | ) | |
| Debtor(s). | ) | Adv. Pro. No. 20-03036 |
| | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |
| Thomas E. Cafferty, Trustee | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| Todd Blackmar, et al. | ) | |
| | ) | |
| Defendant(s). | ) | |

### MEMORANDUM OF DECISION AND ORDER REGARDING CROSS-MOTIONS FOR SUMMARY JUDGMENT

This adversary proceeding is before the court on cross-motions for summary judgment by the parties. Defendant Todd Blackmar is the debtor in the underlying Chapter 7 case. Plaintiff is the Chapter 7 Trustee. In his complaint, Plaintiff alleges fraudulent transfer of a 2007 BMW from the Debtor to Defendant TMB Enterprises, LLC ("TMB") for no consideration. Both Plaintiff and the Defendants move for summary judgment on this claim.

The district court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) as a civil proceeding arising under Title 11. The proceeding has been referred to this court by the district

court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to avoid fraudulent transfers are core proceedings that the court may hear and determine. 28 U.S.C. § 157(b)(2)(H). To the extent necessary, the parties have also consented to entry of final orders and judgments by this court. [Doc. ## 21, 24].

## I. PROCEDURAL BACKGROUND

In 2017, TMB Enterprises, LLC was an entity wholly owned by Todd Blackmar. On November 7, 2017, Blackmar transferred a 2007 BMW Alpina to TMB Enterprises. Blackmar and his wife filed a Chapter 7 petition for relief on April 13, 2020. [Case No. 20-31036]. In his petition, Blackmar scheduled $542,242.81 in secured claims and $1,834.969.06 in unsecured claims. Blackmar further listed assets of $321,472.52. The Blackmars received their discharges on August 5, 2020.

On June 23, 2020, the Chapter 7 Trustee ("Plaintiff") filed this adversary proceeding against Blackmar alleging fraudulent transfer of the 2007 BMW. [Doc. # 1]. Defendant Blackmar filed a timely answer on July 16, 2020. [Doc. # 7]. On August 8, 2020, Plaintiff moved to amend the pleadings. [Doc. # 8]. The court held a pretrial on August 10, 2020, and set a dispositive motion deadline. The next day, Defendant filed his objection to amending the pleadings [ Doc. # 12] and simultaneously moved for judgment on the pleadings [Doc. # 11]. On August 12, 2020, the court set both motions for hearing. [Doc. # 13]. Plaintiff filed his response to Defendant's objection to amending the pleadings. [Doc. # 15]. Following a hearing on September 3, 2020, the court took the motion to amend the pleadings under advisement. [Doc # 18]. On October 2, 2020, Plaintiff filed his objection to the motion for judgment on the pleadings. [Doc. # 17].

On December 21, 2020, the court granted Plaintiff's motion to amend the pleadings to add TMB as a party[1], granted Defendant time to answer the amended complaint, and directed the clerk to issue a summons to be served with the amended complaint on the new party defendant. [Doc. # 19]. The court held the motion for judgment on the pleadings in abeyance pending a further pretrial.

---

[1] As noted by the court in the memorandum of decision and order granting Plaintiff's motion to amend the pleadings:

Plaintiff and one of the creditors of TMB Enterprises, LLC subsequently entered into a stipulation in the Chapter 7 case, which the court approved, abandoning that membership interest as property of the bankruptcy estate "except any interest such membership interest may confer in a 2007 BMW Alpina B7 . . .owned by TMB (the "Excluded Asset"), as the membership interest in TMB is of inconsequential value and benefit to the estate." [Case No. 20-31036].

[Doc. # 19, p. 3/5].

2

Plaintiff filed his amended complaint on December 22, 2020, adding TMB Enterprises, LLC as a party defendant. [Doc. # 21]. On December 23, 2020, Defendants filed their answer to the amended complaint. [Doc. # 24].

At a pretrial hearing on February 11, 2021, in light of the amended pleadings and new party defendant, Defendants were granted leave to refile as a supplement a renewal of the motion for judgment on the pleadings. [Doc. # 28]. Plaintiff was also given leave to file a response to Defendants' supplement and the court allowed discovery to commence in the interim. [*Id*.].

Defendants timely filed their renewed motion for judgment on the pleadings. [Doc. # 29]. Plaintiff filed his response to the renewed motion one day later. [Doc. # 30]. On June 24, 2021, the court issued its memorandum of decision and order as follows: (1) granting Defendants' motion for entry of judgment in their favor on Plaintiff's claim under 11 U.S.C. § 548 based on the affirmative defense of the complaint having been filed outside the applicable statutory reach-back period; (2) denying Defendants' motion as moot on the defense of failure to name an indispensable party; and (3) denying without prejudice Defendants' motion to the extent of the statutory reach-back defense on Plaintiff's claim brought under Ohio Revised Code.Chapter 1336 via 11 U.S.C. § 544(b). [Doc. # 34, p. 6].

At a subsequent pretrial hearing on September 30, 2021, the court directed Plaintiff to file his motion for summary judgment by November 19, 2021, and Defendants to respond 28 days later. [Doc. # 43]. Plaintiff timely filed his motion for summary judgment. [Doc. # 45]. Defendants filed their cross-motion for summary judgment and objection to Plaintiff's motion for summary judgment. [Doc. # 46]. Plaintiff then filed his reply to Plaintiff's motion and objection to Defendants' motion for summary judgment. [Doc. # 47].

As the remaining cause of action is brought under 11 U.S.C. § 544(b), the action to avoid a fraudulent transfer is analyzed in conjunction with Ohio Revised Code Chapter 1336. With briefing completed, the motion is ripe for disposition.

## II. LAW AND ANALYSIS

### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure, made applicable to this proceeding by Federal Rule of Bankruptcy Procedure 7056, summary judgment is only proper where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In reviewing a motion for summary judgment, however, all inferences "must be viewed in the light most favorable to the party opposing the motion." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 586-88 (1986); *Rose v. State Farm Fire & Cas. Co.*, 766 F.3d 532, 535 (6th Cir. 2014).

The party moving for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, "and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). With respect to issues on which the nonmoving party bears the burden of proof, the burden on the moving party may be discharged by pointing out to the court that there is an absence of evidence to support the nonmoving party's case. *Id.* at 325. (*Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986)). Where the moving party has met its initial burden, the adverse party "may not rest upon the mere allegations or denials of his pleading but . . . must set forth specific facts showing there is a genuine issue for trial." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

A party opposing summary judgment must affirmatively present competent evidence that sufficiently establishes a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Id.* at 252. A disputed fact is material only if its resolution might affect the outcome of the case under the governing substantive law. *Rogers v. O'Donnell*, 737 F.3d 1026, 1030 (6th Cir. 2013) (citation omitted).

When each side moves for summary judgment in their favor, the court must apply the same standards to each motion on its merits and draw all reasonable inferences against the moving party in each instance. *See Black Diamond Commercial Finance, L.L.C. v. Murray Energy Corp. (In re Murray Energy Holdings Co.)*, 634 B.R. 951, 973 (Bankr. S.D. Ohio 2021); *In re Bentley*, 607 B.R. 889, 893 (Bankr. E.D. Ky. 2019); *Johnson v. Williams (In re Williams)*, 490 B.R. 236, 239 (Bankr. W.D. Ky. 2013). As noted by the Sixth Circuit:

> When both parties move for summary judgment below, this Circuit does not assume that "the parties consent to resolution of the case on the existing record or that the district court is free to treat the case as if it was submitted for final resolution on a stipulated record." *Taft Broad Co. v. United States* 929 F.2d 240, 248 (6th Cir. 1991) (quoting *John v. Louisiana (Bd. of Trustees for State Colleges and Univs.)*, 757 F.2d 698, 705 (5th Cir. 1985)). In short, a case involving cross-motions for summary judgment requires "evaluat[ing] each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *EMW Women's Surgical Ctr., P.S.C. v. Beshear*, 920 F.3d 421, 425 (6th Cir. 2019) (quoting *McKay v. Federspiel*, 823 F.3d 862, 866 (6th Cir. 2016)).

*Ohio State University v. Redbubble, Inc.*, 989 F.3d 435, 442 (6th Cir. 2021).

### B. Positions of the Parties

Plaintiff's motion for summary judgment sets forth arguments claiming the transfer was actually fraudulent or constructively fraudulent under R.C. §§ 1336.04(A)(1) or (2) and 1336.05(A). Plaintiff seeks to avoid transfer of the vehicle from Blackmar to TMB as he argues no reasonably equivalent value was exchanged as there was no consideration for the transfer of the vehicle. Plaintiff further contends that Blackmar and TMB were insolvent based upon events spanning the transfer date and through April 2020.

The Defendants also move for summary judgment, asserting there is no viable claim for actual fraud; that even if such a viable claim is presented, reasonably equivalent value has been established under either § 1336.04(A)(2) or § 1336.05(A), and the Defendants were not insolvent at the time of the transfer. In addition, Defendants contend that a claim under § 1336.05(B) is untimely. In opposition to Plaintiff's motion for summary judgment, Defendants argue Plaintiff failed to show reasonably equivalent value was not received and insolvency has not been established. Finally, Defendants argue the court should not fashion a remedy as there is no cause of action pled for recovery of the alleged transfer.

With the issues framed, the court turns to analysis of the arguments presented.

### C. Fraudulent Transfers

Under 11 U.S.C. § 544(b)(1):

> [T]he trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

This subsection "arms the trustee with the powers of an actual creditor with an allowable unsecured claim that could have avoided a transfer of the debtor's property or any obligation of the debtor under the applicable (generally nonbankruptcy) law." 5 COLLIER ON BANKRUPTCY ¶ 544.01 (16th ed.).

The movant bears the burden of proof to establish each element of a fraudulent transfer claim and must do so by a preponderance of the evidence. *Lyon v. Eiseman (In re Forbes)*, 372 B.R. 321, 330 (B.A.P. 6th Cir. 2007). *But see Baumgart v. Ptacek (In re Ptacek)*, Case No. 16-10279, AP No. 17-1105, 2019 WL 4049842 *9 (Bankr. N.D. Ohio 2019) (noting an argument to applying a clear and convincing standard and citing *William D. Mundinger Tr. U/A 10/13/00 v. Zellers*, 473 B.R. 222, 233-34 (N.D. Ohio 2012)).

5

1. <u>Existence of a Creditor Holding an Allowable Unsecured Claim and the Transfer of an Interest of the Debtor in Property</u>

A trustee exercising the strong arm powers under § 544(b) to avoid a transfer must establish the following requirements by a preponderance of the evidence: "(1) [a] creditor, (2) holding an allowable unsecured claim; and (3) a transfer of an interest of the debtor in property, (4) that is voidable under applicable [state] law." *In re Forbes*, 372 B.R. at 330 (citing *In re Bushey*, 210 B.R. at 100). The burden of proof is on the trustee seeking to set aside the transfer and to prove all elements of the fraudulent transfer claim. *Id*.

As noted by the Sixth Circuit, to have standing to avoid a transfer under § 544(b), "the trustee must ultimately prove such a creditor exists." *Solomon v. Fellmy (In re Felsner)*, 289 Fed. Appx. 879, 883 (6th Cir. 2008) (citation omitted). Plaintiff cites to the proof of claim filed by Thomas A. Waltz on July 28, 2020, docketed as Claim 13-1 in the underlying Chapter 7 case. In Claim 13-1, Waltz submits a claim in the amount of $163,965.37 for "money loaned." [Case No. 21-31036, Claim 13-1, pp. 2/3]. No objection was filed as to Claim 13-1. *See* 11 U.S.C. § 502(a). At his August 19, 2021 deposition, Blackmar testified that he purchased a business in 2014 which was financed by Genoa Bank and a loan from his stepfather, Tom Waltz. [Doc. # 45, Ex. A, pp. 5-6]. Blackmar stated that he borrowed $200,000 from his stepfather. [*Id*.].

At the time Blackmar and his wife filed their Chapter 7 petition, Blackmar listed an unsecured debt to Thomas Waltz for $163,000, incurred as of May 2014. [Doc. # 1, Schedule E/F, pp. 78/147]. A note under the listed debt stated, "Loan made to TMB Enterprises. Debtor 1 may be personally liable." [*Id*.]. Todd M. Blackmar is listed on the Chapter 7 petition as Debtor 1. [*Id*. at pp. 1/147]. Thomas Walz is also listed in the Creditor Matrix. [*Id*. at pp. 145/147]. These undisputed facts meet the first two requirements under § 544(b) insofar as it establishes a creditor holding an allowable unsecured claim.

The third factor, transfer of a an interest of the debtor in property was addressed by the Sixth Circuit in *In re Forbes* as follows: "The United States Supreme Court has defined 'an interest of the debtor in property' as including any 'property that would have been part of the [debtor's bankruptcy] estate had it not been transferred before the commencement of the bankruptcy proceedings.'" 372 B.R. at 330 (citing *Begier v. IRS*, 496 U.S. 53, 58, 110 S.Ct. 2258, 2263, 110 L.Ed.2d 46 (1990)). Blackmar averred that on November 7, 2017, he transferred title of the 2007 BMW Alpina to TMB Enterprises. [Doc. # 46-3, Ex. B at ¶ 13]. Here, the parties do not dispute that the transfer of the 2007 BMW was a transfer of an interest of the debtor in property for purposes of a § 544(b) analysis.

6

Accordingly, the court concludes that Plaintiff has satisfied the first three elements under § 544(b). The discussion next turns to analysis of whether the transfer of property was fraudulent under applicable state law.

2. Whether Transfer of the 2007 BMW was Fraudulent Under Ohio's Fraudulent Transfer Statute

Ohio has its own fraudulent transfer law, codified as the Ohio Uniform Fraudulent Transfer Act ("UFTA") under Chapter 1336 of the Ohio Revised Code. It creates a right of action for a creditor to set aside an allegedly fraudulent transfer of assets to the extent necessary to satisfy the creditor's claims. *Vancrest Mgmt. Corp. v. Mullenhour*, 140 N.E.3d 1051, 1064 (Ohio App. 2019) (citations omitted). The law of fraudulent transfers sets boundaries of acceptable debtor conduct as to creditors in conveying assets and incurring obligations.

As explained by the court in *Vancrest*:

> The Ohio UFTA's "key operative provisions are R.C. 1336.04 and R.C. 1336.05." *Id*. "[I]rrespective of when the debt arose, a creditor may prove that the contested asset transfer met the R.C. 1336.04 elements, and thus, was a fraudulent transfer as defined by this provision." *Id*. citing *E. Savs. Bank & Bucci*, 7th Dist. Mahoning No. 08 MA 28, 2008-Ohio-6363, 2008 WL 5124559, ¶ 93 and *In re Youngstown Osteopathic Hosp. Assn.* at 408-409. "As to a debt that existed when the debtor made the contested asset transfer, a creditor may prove that the transfer met the R.C. 1336.05 elements, and thus was a fraudulent transfer as statutorily defined." *Id*. citing *Bucci* at ¶ 93.

*Id*. Under these provisions, "fraud is imputed to the debtor when the statutory elements have been met." *Id*. (quoting *In re Youngstown Osteopathic Hosp. Assn.*, 280 B.R. 400, 408 (Bankr. N.D. Ohio 2002)).

Two types of transfers (or incurrence of obligations) are addressed in Ohio Revised Code Chapter 1336: "actually fraudulent transfers" and "constructively fraudulent transfers."

An "actually fraudulent transfer" is one made with "actual intent to hinder, delay or defraud any creditor of the debtor." R.C. § 1336.04(A)(1). Under Ohio law, a transfer may be avoided as actually fraudulent if it was motivated entirely or merely in part by a desire to hinder, delay or defraud creditors. *Daneman v. Stanley (In re Stanley)*, 384 B.R. 788, 799 (Bankr. S.D. Ohio 2008). A creditor whose claim arose before the transfer was made or within a reasonable time not to exceed four years after the transfer was made has statutory standing to challenge a transfer as actually fraudulent. R.C. § 1336.04(A).

A "constructively fraudulent transfer" is addressed in both R.C. §§ 1336.04(A)(2) and 1336.05. While a "constructively fraudulent transfer" does not depend on the intent with which the transfer was made, *Haynes v. Holstein (In re Crescent Communities, Inc.)*, 298 B.R. 143, 149 (Bankr. S.D. Ohio 2003), a constructively fraudulent transfer may exist without any intent on the part of the debtor as no actual

7

fraud need be shown. *In re Citi-Toledo Partners II*, 254 B.R. 155, 161 (Bankr. N.D. Ohio 2000). Instead, the focus is on the effect of the transaction on the debtor's finances.

A creditor whose claim arose before the challenged transfer was made has broader options to challenge it under the statute, as it may proceed under any of R.C. §§ 1336.04(A)(1), 1336.04(A)(2) and 1336.05. A creditor whose claim arose within a reasonable time not to exceed four years after the transfer occurred may challenge it either as actually fraudulent under R.C. § 1336.04(A)(1) or as constructively fraudulent, but only under R.C. § 1336.04(A)(2). A creditor whose claim arose after the challenged transfer lacks statutory standing to challenge it as constructively fraudulent under R.C. § 1336.05. The logic of these statutory standing distinctions is readily apparent. The additional circumstances of a constructively fraudulent transfer under R.C. § 1336.04(A)(2) involving property depletion and debts incurred beyond the debtor's ability to pay them are forward looking and could impact a debtor's ability to repay creditors who come later. The additional circumstance of a constructively fraudulent transfer under R.C. § 1336.05 is insolvency, which is defined by the statute at R.C. § 1336.02. As defined, insolvency occurs at a point in time.

    a. <u>Actually Fraudulent Transfer</u>

To establish an actually fraudulent transfer under the Ohio statute, a movant must demonstrate:

> (A) A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor, whether the claim of the creditor arose before, or within a reasonable time not to exceed four years after, the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation in either of the following ways:
>
> (1) With actual intent to hinder, delay, or defraud any creditor of the debtor;

R.C. § 1336.04(A)(1). The transfer of the 2007 BMW from Blackmar to TMB meets the requirements of a transfer of an interest in the property of a debtor as to the first part of this analysis.

The next factor to be established is actual intent of the debtor. "Ohio has recognized that proof of actual intent will often be impossible to procure." *Blood v. Nofzinger*, 834 N.E.2d 358, 368 (Ohio App. 2005) (citations omitted). "A finding of intent to hinder, delay or defraud creditors may be made on the basis of circumstantial evidence." *Reiser v. Hayslip (In re Canyon Systems Corp.)*, 343 B.R. 615, 636 (Bankr. S.D. Ohio 2006) (citations omitted). Where a debtor's subjective intent is at issue, summary judgment is generally not warranted in a claim alleging actual fraudulent transfer. *Id.*

Alternatively, intent may be established through "badges of fraud" enumerated in § 1336.04(B):

> (1) Whether the transfer or obligation was to an insider;

8

(2) Whether the debtor retained possession or control of the property transferred after the transfer;

(3) Whether the transfer or obligation was disclosed or concealed;

(4) Whether before the transfer was made or the obligation incurred, the debtor had been sued or threatened with suit;

(5) Whether the transfer was of substantially all of the assets of the debtor;

(6) Whether the debtor absconded;

(7) Whether the debtor removed or concealed assets;

(8) Whether the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(9) Whether the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(10) Whether the transfer occurred shortly before or shortly after a substantial debt was incurred;

(11) Whether the debtor transferred the essential assets of the business to a lienholder who transferred the assets to an insider of the debtor.

Where the party alleging fraud can establish "a sufficient number of 'badges,' an inference of actual fraud arises and the burden then shifts to the defendant to prove that the transfer was not fraudulent." *William D. Mundinger Trust U/A 10/13/11 v. Zellers*, 473 B.R. 222, 233-34 (N.D. Ohio 2012) citing *Blood v. Nofzinger*, 843 N.E.2d at 559 (citations omitted). *See also Silagy v. Gagnon (In re Gabor)*, 280 B.R. 149, 156 (Bankr. N.D. Ohio 2002); *Bates Recycling, Inc. v. Conaway*, 126 N.E.3d 341, 345 (Ohio App. 2018). The facts and circumstances of each case will factor into a determination on the issue of fraudulent intent. *Vancrest Management Corp.*, 140 N.E.2d at 1065. Where a presumption of fraud is established, a defendant may rebut it by establishing the transfer was in good faith and for reasonably equivalent value. R.C. § 1336.08(A); *Bates Recycling, Inc.*, 126 N.E.2d at 345.

In this instance, Plaintiff contends that the transfer of the vehicle to an entity completely owned by Blackmar constitutes a badge under R.C. § 1336.04(B)(1). He also argues that Blackmar, in his capacity as agent for TMB, retained possession of the vehicle until it was sold in March 2021. Both of these statements are not disputed by the Defendants. The third badge Plaintiff argues in favor of intent, is the insolvency of Blackmar and TMB which is disputed by the Defendants. The Defendants further contend the transfer of the vehicle was in good faith and made for reasonably equivalent value. As both of these issues also factor into a constructively fraudulent transfer analysis, that discussion is set forth at sections (i) and (ii) below.

9

b. Constructively Fraudulent Transfer

A claim for a constructively fraudulent transfer under R.C. § 1336.05(A) requires proof of the following elements: "First, a transfer made by a debtor is fraudulent if the debtor made the transfer without receiving a reasonably equivalent value in exchange for the transfer and the debtor was insolvent at that time or the debtor became insolvent as a result of the transfer."

As there is no dispute amongst the parties as to transfer of the vehicle from Blackmar to TMB, the focus of the analysis turns to reasonably equivalent value and insolvency.

i. Reasonably equivalent value

As recognized by the Sixth Circuit:

> A fundamental element of a constructive fraudulent transfer claim is a transfer made in exchange for less than reasonably equivalent value. See Ohio Rev.Code Ann. §§ 1336.04(A)(2) and 1336.05(A). In assessing whether a challenged transfer is supported by reasonably equivalent value, courts generally compare the value of the property transferred with the value of that received in exchange for the transfer. *See, e.g., Aristocrat Lakewood Nursing Home v. Mayne*, No. 73328, 1999 WL 285386, at *8 (Ohio Ct.App. May 6, 1999) (where transferor "gave up a certain asset of $7,500" in return for "a highly contingent potential opportunity to rent a home" from the transferee, "record does not show that [transferor's] benefit was 'reasonably equivalent' to the value [he] surrendered...."); *Deitering v. Amann*, No. 12864, 1992 WL 127654, at *2 (Ohio Ct.App. June 11, 1992) (measuring value of property transferred and comparing it to value received by transferor); *see also Barber v. Golden Seed Co., Inc.*, 129 F.3d 382, 387 (7th Cir.1997) ("The test used to determine reasonably equivalent value in the context of a fraudulent conveyance requires the court to determine the value of what was transferred and compare it to what was received.") (citing *Matter of Vitreous Steel Prod. Co.*, 911 F.2d 1223, 1234–35 (7th Cir.1990)); *Harman v. First American Bank (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 484 (4th Cir.1992) ("[P]roper focus is on the net effect of the transfers on the debtor's estate....").

*Corzin v. Fordu (In re Fordu)*, 201 F.3d 693, 707 (6th Cir. 1999). *Accord Congrove v. McDonald's Corp. (In re Congrove)*, 222 Fed. Appx. 450 *4 (6th Cir. 2007). Reasonable equivalency is viewed from the standpoint of the debtor. *Reiser v. Hayslip (In re Canyon Systems Corp.)*, 343 B.R. 615, 639 (Bankr. S.D. Ohio 2006) (citations omitted).

The determination of reasonably equivalent value has been characterized as a two-step analysis. "First, a court considers whether the debtor received any value." *Barbacci v. Mikstay (In re Wallace)*, No. 12-61185, AP No. 12-6120, 2013 WL 3878165 *2 (Bankr. N.D. Ohio 2013) citing *Lisle v. John Wiley & Sons, Inc. (In re Wilkinson)*, 196 Fed. Appx. 337, 341 (6th Cir. 2006). "Next, the court must determine if the compensation was reasonable." *Id. See e.g., In re Felsner*, 289 Fed. Appx. 879, 884 (6th Cir. 2008)

(noting the comparison of "what went out" and "what was received" in analyzing reasonable equivalent value under Florida's fraudulent transfer statute) (citation omitted).

Under Ohio's UFTA, value is defined in R.C. § 1336.03 as follows:

> Value is given for a transfer or an obligation if, in exchange for the transfer or obligation, property is transferred or an antecedent debt is secured or satisfied, but value does not include an unperformed promise made otherwise than in the ordinary course of the business of the promisor to furnish support to the debtor or another person.

§ 1336.03(A). Whether reasonably equivalent value existed at the time of a transfer is a factual determination. *In re Wilkinson*, 196 Fed. Appx. at 341; *In re Gabor*, 280 B.R. at 158. The Sixth Circuit has determined that "[v]alue can be in the form of either a direct economic benefit or an indirect economic benefit." *In re Wilkinson*, 196 Fed. Appx. at 342.

The circumstances surrounding a transfer are material. *Southeast Waffles, LLC v. U.S. Dep't of Treasury (In re Southeast Waffles, LLC)*, 460 B.R. 132, 139 (B.A.P. 6th Cir. 2011). As noted by the Sixth Circuit:

> Instead, we look to the net effect of the transfer or obligation on the debtor's estate and, more specifically, on the remaining funds available to the unsecured creditors. *In re Congrove*, 222 Fed. App'x. 450, 454 (6th Cir. 2007); *see also In re Northern Merch., Inc.*, 371 F.3d 1056, 1059 (9th Cir. 2004). "As long as the unsecured creditors are not worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred. *Congrove*, 222 Fed. App'x at 454 (quoting *In re Jeffrey Bigelow Design Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992)).

*Suhar v. Bruno (In re Neal)*, 541 Fed. Appx. 609, 611-12 (6th Cir. 2013).

In his motion, Plaintiff begins his analysis of reasonably equivalent value by addressing transfer of the vehicle and that the application for a certificate of title, under R.C. § 4505.04[2], establishes Blackmar was the owner of the vehicle at the time of the transfer. As the car title transferred indicated the purchase price of $0.0 and the subsequent tax owed as $0.0, Plaintiff contends "there was no consideration for the transfer of the vehicle." [Doc. # 45 at pp. 6/10].

---

[2] R.C. 4505.04 Certificate of title as evidence of ownership;
(A) No person acquiring a motor vehicle from its owner, whether the owner is a manufacturer, importer, dealer, or any other person shall acquire any right, title, claim, or interest in or to the motor vehicle until there is issued to the person a certificate of title to the motor vehicle, or there is delivered to the person a manufacturer's or importer's certificate for it, or a certificate of title to it is assigned as authorized by section 4505 of the Revised Code; and no waiver or estoppel operates in favor of such person against a person having possession of the certificate of title to, or manufacturer's or importer's certificate for, the motor vehicle, for a valuable consideration
(B) Subject to division (C) of this section, no court shall recognize the right, title, claim, or interest of any person in or to any motor vehicle sold or disposed of, or mortgaged or encumbered, unless evidenced:
    (1) By a certificate of title . . . .

11

In addressing the value of the vehicle, Plaintiff notes the depreciated net book value of the car, as listed by TMB's "Book Asset Detail" for the calendar year of 2019, was $18,980.18. [Doc. # 45-3, p.1/2]. And "9 months after this adversary proceeding was commenced, Blackmar, still in possession of the vehicle and acting as the agent for the defunct TMB, sold the BMW to an auction house for $4,443.50." [Doc. # 45 at pp. 6/10]. The Plaintiff's assertion that "this sale during the middle of litigation over the pre-petition transfer of the vehicle was an effort to deplete assets of the bankruptcy estate and to provide an even smaller dividend to Blackmar's creditors." [*Id*.].

Defendant Blackmar offers his affidavit in opposition as follows:

> 5. On August 25, 2017, TMB paid for the purchase of a certain vehicle; to wit: a 2007 BMW Alpina, VIN: WBAHL83567DT89422. ("Vehicle").
> 6. The Vehicle was purchased from West Coast Auto Enthusiasts. ("WCAE").
> 7. That the Bank Statement attached to the Motion for summary Judgment as Exhibit A is an authentic copy of the Bank Statement issued for a business account owned by TMB.
> 8. That on page 7 of said bank statement, there is noted an ACH transaction on August 25, 2017, in the amount of $21,000.00 entitled "TMB Enterprises WCAE." Said transaction constituted the purchase price paid by TMB for the vehicle.
> 9. That TMB paid the purchase price of the Vehicle.
> 10. That based upon TMB paying for the purchase price of the Vehicle, it was my intent to have title to the Vehicle placed in the name of TMB.
> 11. That because of a mistake made by the seller of the Vehicle, WCAE, title to the Vehicle originally was placed in my name.
> 12. That Exhibit B as attached to the Motion for Summary Judgment is an authentic copy of a statement issued by the Seller, WCAE, regarding the sale of the Vehicle.
> 13. That on November 7, 2017, I formally transferred the Vehicle to TMB.
> 14. That the above transfer was effectuated to recognize my intent to have TMB own the Vehicle and to recognize that TMB paid for the purchase price of the Vehicle.
> 15. The purchase price for the Vehicle paid by TMB was not made as a form of compensation to myself, personally, whether as a distribution, dividend or salary from TMB.
> 16. That Exhibit C attached to the Motion for Summary Judgment is an authentic copy of the 2017 IRS Form K-1 issued to me by TMB.
> 17. That I did not transfer title to the Vehicle to TMB with the intent of placing such property beyond the reach of my creditors.
> 18. That I transferred the Vehicle to TMB based upon my good faith belief that TMB should hold title to the Vehicle based upon TMB paying the purchase price for the Vehicle.

[Doc.# 46-3, pp. 1-2/3]. Blackmar avers the transfer was made for reasonably equivalent value because he did not purchase the vehicle and the seller mistakenly listed him as the owner as opposed to TMB.

In reply, Plaintiff contends that Blackmar did not receive reasonably equivalent value in exchange for transferring title of the BMW to TMB. Plaintff also challenges the TMB's "ambiguous bank statement entry in defendant's Exhibit A", offered for the proposition that TMB paid for the vehicle, as "insufficient

12

evidence" and contends the evidence submitted by movant "shows that the debtor did not receive reasonably equivalent value for the transfer of the vehicle. [Doc. # 47 at p. 2/5]. While Plaintiff characterizes Defendants' exhibit styled as the TMB's bank statement as "insufficient evidence," the court assumes this to mean inadmissible evidence although Plaintiff's brief was less than clear on this objection. A similar challenge was recently addressed by a sister court in Indiana:

> Admittedly, Federal Rule of Bankruptcy Procedure 56(e) once required that evidence presented on summary judgment be authenticated as required under Federal Rule of Evidence 901 and 902. But Rule 56 was amended in 2010 to eliminate this requirement. *See Abbott v. Elwood Staffing Serv's, Inc.*, 44 F.Supp.3d 1125 (N.D. Ala. 2014). Now Rule 56(c)(1)(A) expressly states that a party may cite to "materials in the record including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatories answers, or other materials" that an opposing party may object "that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Thus, under current rule 56, an objection *cannot* be based solely on evidence not being authenticated—the objection must be that evidence *cannot* be presented in admissible form, not that the evidence *has not* been presented in admissible form. *Abbott*, 44 F.Supp.3d at 1135 (citations omitted) (italics in original).

*Gresk v. Indiana Golf Car, Inc. (In re Gonzalez International, Inc.)*, 626 B.R. 822, 827-28 (Bankr. S.D. Ind. 2021). Therefore, to the extent Plaintiff challenges the TMB bank exhibit as insufficient, he has not stated that such an exhibit could not be presented in admissible form. As this document presumably may be presented at trial in an admissible form, it cannot be discounted in the summary judgment analysis.

In support of their motion for summary judgment, Defendants contend Blackmar owed a debt to TMB as the car was originally and mistakenly titled in Blackmar's name. Transfer of the title to TMB, according to Defendants, satisfied the debt and establishes reasonably equivalent value under either R.C. §§1336.04(A)(2) or 1336.05(A).

Neither side disputes that the transfer of the vehicle to TMB, per the title, was for zero dollars. In viewing this circumstance from the Debtor's perspective, reasonably equivalent value is not viewed in a vacuum but by the circumstances surrounding the transfer. "[A] party gives reasonably equivalent value for what it gives up if it gets roughly the value it gave[,] and is not limited to money nor to value transferred pursuant to a valid contract." *Nathan v. Libra (In re Libra)*, 584 B.R. 550, 560 (Bankr. E.D. Mich. 2018) (citation omitted). Additionally, "[w]hether consideration supporting [the] challenged transfer is 'fair' under Ohio's Uniform Fraudulent Transfer Act must be determined from the standpoint of the debtor." *In re Gabor*, 280 B.R. at 158 (citations omitted). The averments by Blackmar and exhibits in support, raise a genuine issue of material fact regarding reasonably equivalent value in the transfer of the vehicle. While

13

each side claims they are entitled to judgment as a matter of law, the materially conflicting circumstances and evidence presented by both sides raise issues of material fact. As the court is prohibited from making factual determinations at the summary judgment stage, the issue of reasonably equivalent value is appropriate for trial.

## ii. Debtor Insolvency

The second part of the analysis under R.C. § 1336.05(A) or as a badge of fraud under R.C. § 1336.04(B)(9), requires that the debtor was insolvent or became insolvent as a result of the transfer. Section 101(32) of the Bankruptcy Code defines the term "insolvent" as follows:

> (A) With reference to an entity other than a partnership and a municipality, financial condition such that the sum of such entity's debts is greater than all of such entity's property at a fair valuation, exclusive of—
> (i) property transferred, concealed, or removed with intent to hinder, delay, or default such entity's creditors; and
> (ii) property that may be exempted from property of the estate under section 522 of this title;

11 U.S.C. § 101(32). The definition under the Bankruptcy Code is not dissimilar from Ohio's definition of this term. Ohio defines insolvency as follows: (1) a debtor is insolvent if the sum of the debts of the debtor is greater than all of the assets of the debtor at a fair valuation; or (2) a debtor who generally is not paying his debts as they become due is presumed to be insolvent. R.C. §§ 1336.02(A)(1) and (2). To establish insolvency, a movant may prove either balance sheet insolvency or equitable insolvency. *In re Gabor*, 380 B.R. at 160.

Balance sheet insolvency "is basically a balance sheet test: that is, a debtor is insolvent when the debtor's liabilities exceed the debtor's assets, excluding the value of preferences, fraudulent conveyances and exemptions." *Id.* citing *Foreman Indus., Inc. v. Broadway Sand and Gravel (In re Foreman Indus., Inc.)*, 59 B.R. 145, 149 (Bankr. S.D. Ohio 1986). Ohio also recognizes equitable insolvency which:

> [I]ncludes the debtor, who, although presently meeting his obligations as they become due, has incurred unmatured debts to such an extent that it is apparent he will not be able to meet them when they become absolute and matured. This is determined by considering the present 'fair and salable value' of his assets, and comparing that with the amount of his probable liability on his existing debts as they become absolute and matured.

*Id.* citing *Cellar Lumber Co. v. Holley*, 9 Ohio App.2d 288, 290-91, 224 N.E.2d 360, 363 (1976).

A third method to establish insolvency indirectly is retrojection. That method has been characterized as the "inverse of projection." *In re Stanley*, 384 B.R. at 807. Such an analysis "begins with a debtor's financial condition at a certain point in time (typically the petition date) and extrapolates

14

back in time in an attempt to show that the debtor must have been insolvent at some earlier relevant time (*e.g.*, the date of the alleged fraudulent transfer)." *Id*.

An insolvency analysis requires two important factors; valuation and timing. The valuation of property in the context of insolvency is addressed by an influential treatise in the following manner:

> The Code definition of insolvency is essentially a balance sheet test. A debtor is insolvent when its liabilities exceed its assets. Insolvency is determined by whether assets exceed liabilities, and not, except in the case of a municipality, whether the debtor was able to pay its debts as they became due. The application of an assets-and-liabilities test requires of necessity a valuation of the property involved. This may be a difficult task, however, because value is not a natural or fixed quality, but will vary according to the purposes and policies which dictate the determinative judgments and processes by which it is ascertained. The statute describes the controlling standard of valuation with one brief phrase: "at a *fair* valuation." But the meaning and effect of this term in concrete cases generates a formidable and, on the surface, not always consistent stream of adjudications.
>
> . . . .
>
> One of the most vexing problems in the valuation of the assets of a business enterprise as of a specified date is the question whether, under what conditions, it should be treated as a going concern requiring appraisal of its property as an active unit rather than on an item-by-item basis. Fair value, in the case of a going concern, is determined by "the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time." There is overwhelming authority to the effect that normally such valuation must be made from the vantage of a going concern and that subsequent dismemberment or impossibility to dispose of plant, equipment, inventory, etc., as an entirety should not enter into the picture. Indeed, it has been held that the court should use fair market going concern price "unless a business is on its deathbed," in which case a liquidating value should be used. Where the enterprise was already defunct at the critical date a non-going concern value has been applied by the courts.

7 COLLIER ON BANKRUPTCY ¶101.32[4] (16th ed.). (Emphasis in original)(citations omitted). *See also In re SunEdison*, 556 B.R. 94, 104 (Bankr. S.D.N.Y. 2016) (test for insolvency turns on a comparison between debtor's debts and the fair valuation of its property); *In re BWP Transport, Inc.*, 462 B.R. 225, 234-35 (Bankr. E.D. Mich. 2011).

In support of his insolvency argument, Plaintiff lists the following set of facts:

1. TMB Enterprises, LLC:

    a. Blackmar was the sole member of the entity. Depo. Blackmar 5:14-17.
    b. Blackmar purchased TMB for $890,000 and financed 100% of the purchase, with financing that included a $691,000 debt to Genoa Bank. Depo. Blackmar 5:18-6:6.

15

c. By the end of calendar year 2017, TMB's liabilities exceeded its assets. Depo. Blackmar 8:1-24, Ex. E.
d. Between April and December of 2019, Blackmar withdrew $95,000 from personal 401 accounts and transferred the funds to TMB. Voluntary Petition and attachments, Court Docket #1, Statement of Financial Affairs (SOFA), line 18.

2. 7160 Tottenham Road, Toledo, OH:

   a. Blackmar owned the Tottenham Road home in 2017 with a county auditor's value of $184,000, and in 2019 he owed creditor Fifth Third Bank $177,674.81 on his note and mortgage on the property. Vol. Pet. Line 5, Schedule A, line 1.1, Schedule D, line 2.1, SOFA, line 2, Ex. F.
   b. By 2019, Genoa Bank was worried about its position with TMB and demanded that Blackmar provide it with a second mortgage on his house for the $325,000 that he owed it at the time. Depo. Blackmar 21:7-22:11.
   c. During the course of this proceeding, the Tottenham road home was foreclosed by creditor Fifth Third Bank, and creditor Genoa Bank, with a junior lien to Fifth Third Bank, was paid just $22,194 of its debt. Ex. G; Depo. Blackmar 20:21-21:5.

3. 2015 Jeep Cherokee:

   a. Blackmar personally owned the Jeep in 2017, he scheduled a value of the car on his bankruptcy petition of $15,000, and in April of 2020, $14,046 was still owed to the secured creditor, Santander. Voluntary Petition, Schedule B, line 3.1, Schedule D, line 2.2; Depo. Blackmar 26:12-13.
   b. Blackmar was using TMB business bank accounts to make the Jeep car payments. Depo. Blackmar 13:11-14:1.

4. 401(k)

   a. Blackmar owned the 401 account in 2017, and by the time that his petition was filed in April of 2020, the balance was down to $33,418, after taking significant withdrawals between 2017 and 2020. Vol. Pet. Schedule B, line 21; Depo. Blackmar 27:5-17.

5. Use of business bank accounts to pay personal liabilities:

   a. Blackmar paid his personally owned Jeep Cherokee car payments, and at least some of his son's tuition payments, with business bank accounts. Depo. Blackmar 13:11-14:6.

6. By April of 2020, Blackmar scheduled over one million dollars in unsecured debts on his petition for relief. Vol. Pet., Schedule F.

[Doc. # 45 at pp. 6-7/10].

16

20-03036-maw    Doc 48    FILED 07/01/22    ENTERED 07/01/22 16:35:20    Page 16 of 20

The Plaintiff's stated facts paint with a broad brush and fail to take valuation into account at the time of the transfer. For example, Plaintiff fails to address valuation of the business in order to establish whether TMB or Blackmar were insolvent at the time of transfer. Nor is there undisputed evidence to support whether valuation of the business is based on a fair market going concern price or on liquidating value. In contrast, Blackmar contends that he and TMB were not delinquent in their financial obligations at the time of the transfer of the vehicle. Defendants argue the net worth of Blackmar did not change as a result of the transfer of the vehicle. Plaintiff also challenges whether Blackmar was paying his financial obligations as they came due and argues that use of TMB funds to pay Blackmar's personal debts, such as his Jeep payment or son's tuition were actually undisclosed compensation to place funds out of the reach of TMB's creditors.

A second factor as to the insolvency analysis is timing. The financial status of a debtor or transferee is assessed as "within a reasonable time of the transfer." *Baumgartner-Novak v. Race Engines Plus, LLC (In re TMT Aero, Inc.)*, Case No. 13-30349, AP 14-3157, 2015 WL 5924669 *3 (Bankr. N.D. Ohio 2015), (citing *Ohio Corrugating Co. v. DAC, Inc. (In re Ohio Corrugating Co.)*, 91 B.R. 430, 436 (Bankr. N.D. Ohio 1998)). In this case, the gap between the date of the transfer, November 7, 2017, and filing of the voluntary petition on April 13, 2020, is nearly two and a half years. Assuming that Plaintiff is advocating a retrojection analysis, this twenty-nine month gap is too long to infer insolvency in late 2017. *See Shubert v. Foulkrod (In re Bentivegna)*, 597 B.R. 261, 267-68 (Bankr. E.D. Pa. 2019) (finding evidence of debtor's financial state as contained in petition schedules not to be probative of an alleged fraudulent transfer ten months earlier); *In re Stanley*, 384 B.R. at 805-08 (finding retrojection analysis inapplicable to a nearly two-year gap between the transfer and petition date). The Plaintiff also offers Blackmar's schedules filed in his Chapter 7 petition in support of his insolvency argument. A bankruptcy court may take judicial notice[3] of schedules filed in the case docket, but need not infer the truthfulness of the information contained therein. *In re Guerroro*, 536 B.R. 817, 822 n.3 (Bankr. E.D. Wis. 2015). *See also French v. Diller (In re Stauffer)*, Case No. 91-33363, AP 92-3313, 1994 WL 115914 *3 (Bankr. N.D. Ohio 1994) (court may not take judicial notice of the truth of the assertions contained in bankruptcy schedules) (citations omitted). This is especially true when as here, the time of the transfer was more than

---

[3] The court takes judicial notice of the contents of its case docket. Fed. R. Bankr. P. 9017; Fed. R. Evid. 201(b)(2); *In re Calder*, 907 F.2d 953, 955 n.2 (10th Cir. 1990); *St. Louis Baptist Temple, Inc. v. Fed. Deposit Ins. Corp.*, 605 F.2d 1169, 1171-72 (10th Cir. 1979) (stating that judicial notice is particularly applicable to the court's own records of litigation closely related to the case before it); *United States v. Brugnara*, 856 F.3d 1198, 1209 (9th Cir. 2017) (stating that district court may properly take judicial notice of its own records).

two years removed from the petition date and the Debtor disputes the claim of insolvency at the time of the transfer.

Both sides have raised genuine issues of material fact as to valuation and timing relating to the issue of insolvency. As the facts are not fully developed, summary judgment is not warranted for either party and the issues remain appropriate for trial.

### D. Remaining Issues

Three issues that were raised in Defendants' cross-motion for and objection to summary judgment remain to be addressed.

First, Defendants submit the Amended Complaint does not state a claim for actual fraud. Specifically, they contend the Amended Complaint fails to allege any fraud nor does the Plaintiff specifically cite to R.C. § 1336.04(A)(1). Defendants are correct that a court may consider in a motion for summary judgment arguments made under a Rule 12(b)(6) failure to state a claim standard. *See Myers v. Moore*, 326 F.R.D. 50, 58-59 (S.D.N.Y. 2018). As noted by Plaintiff, the court, in its June 24, 2021, Memorandum of Decision and Order on Defendants' renewed motion for judgment on the pleadings, stated the following:

> [T]he amended complaint asserts a claim under O.R.C. Chapter 1336, Ohio's Uniform Fraudulent Transfer Act ("UFTA"). [Doc. No. 21 at ¶ 1]. Sections 1336.04 and 1336.05 of the Ohio Revised Code establish claims for actually fraudulent transfers (O.R.C. § 1336.04(A)(1)), constructively fraudulent transfers (O.R.C. § 1336.04(A)(2) and § 1336.05(A)), and insider transfers (O.R.C. § 1336.05(B). *Plaintiff pleads elements of all three, including certain of the badges of fraud relative to actual intent, see O.R.C. § 1336.04(B), the transferor's insolvency, lack of consideration and facts indicative of insider status of the transferee, see O.R.C. § 1336.01(G). The parties to the transfer, the subject of the transfer and the date of the transfer are all set forth in the amended complaint*.

[Doc. No. 34 at p. 5/6] (emphasis added). Based upon this finding, it would appear that under either a Rule 12(b)(6) or Rule 56 standard (previously addressed), the result is that the claim withstands a challenge by the Defendants. *See Jude v. Inez Deposit Bank*, 968 F.2d 1215, 1992 WL 158877 *4 (6th Cir. 1992) (upholding summary judgment based on a failure to plead under Rule 9(b)). Therefore, the Defendants' challenge to the claim for actual fraud not being properly pled is without merit.

Second, the Defendants contend that a claim under R.C. § 1336.05(B) cannot proceed forward as it is outside of the statute of limitations. Under R.C. § 1336.05(B):

> A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made or the obligation was incurred if the transfer was made to or the obligation was incurred with respect to an insider for an antecedent debt,

18

the debtor was insolvent at that time, and the insider had reasonable cause to believe that the debtor was insolvent.

A claim for insider constructive fraudulent transfer "is extinguished unless an action is brought" as follows: "[i]f the transfer or obligation is fraudulent under division (B) of section 1336.05 of the Revised Code, within one year after the transfer was made or the obligation was incurred." R.C. § 1336.09(C). The Defendants assert that as the date of the transfer was November 7, 2017, under R.C. § 1336.09(C), a cause of action under R.C. § 1336.05(B) as against Blackmar as an insider for avoidance purposes had to be filed no later than November 7, 2018. As Defendant Blackmar's voluntary chapter 7 petition was filed on April 13, 2020, a claim under R.C. § 1336.05(B) is untimely. There is no objection or discussion on this issue by the Plaintiff. Accordingly, as there is no material dispute as to a genuine issue of material fact, the Defendants are granted summary judgment as a matter of law as to a claim under R.C. § 1336.05(B).

Third, Defendants request that the court not fashion a recovery in the event Plaintiff succeeds on his avoidance claim. The Sixth Circuit has characterized the issues of recovery and avoidance in the following manner:

> First, avoidance and recovery are distinct concepts and process. This is clear from both the statute itself and from its legislative history. Avoidance and recovery are addressed in two separate sections of the code, 11 U.S.C. § 544 and § 550, respectively, and have two separate statutes of limitations, 11 U.S.C. § 546(a) and 550(f), respectively. According to the House Report for the Bankruptcy Reform Act of 1978, § 550 "enunciates the separation between the concepts of avoiding a transfer and recovering from the transferee." H.R.Rep. No. 95-595, at 375 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5787, 6331. The fact that avoidance and recovery are distinct does not mean that avoidance cannot trigger recovery, but it does suggest that avoidance need not always trigger recovery.

*Suhar v. Burns (In re Burns)*, 322 F.3d 421, 427 (6th Cir. 2003). *Accord Moyer v. Rosich (In re Rosich)*, 570 B.R. 278, 282 (Bankr. W.D. Mich. 2017); *Spradlin v.Pryor Cashman, LLP (In re Licking River Mining)*, 565 B.R. 794, 801 (Bankr. E.D. Ky. 2017) (noting avoidance and recovery are related conceptually but analytically distinct). Moreover, it has been viewed as preferable to plead an action that both avoids a transfer and seeks recovery of the transfer or value therein under the appropriate code section. *SKK Liquidation Trust v. Green & Green, LPA (In re Spinnaker Indus., Inc.)*, 328 B.R. 755, 764 (Bankr. S.D. Ohio 2005).

As the prayer in the Amended Complaint states:

> Trustee seeks an Order avoiding the transfer of the 2007 BMW that would place the vehicle in the possession of the debtor at the time of his petition for relief, an Order to TMB

Enterprises LLC to transfer the 2007 BMW back to the debtor, Todd M. Blackmar, the costs of this proceeding, and for such other and further relief as the Court deems proper.

[Doc. # 21 at ¶ 10], it appears there is a request for avoidance of the transfer. The request ordering a transfer of the vehicle back to the Blackmar is unclear as the parties appear to agree that the 2007 BMW was sold at auction after the adversary proceeding was commenced. As the Amended Complaint seeks avoidance and the court can only act on the claims before it, the issue of recovery is not ripe for disposition. *Brown v. Phillips (In re Phillips)*, 379 B.R. 765, 780 (Bankr. N.D. Ill. 2007) (court must first make a determination whether the transfer was fraudulent under applicable state law before recovery can be addressed).

### III. <u>CONCLUSION</u>

The court finds that genuine issues of material fact remain as to the claims asserted under R.C. §§ 1336.04(A)(1) and (2) as well as R.C. § 1336.05(A). Accordingly, Plaintiff's motion for summary judgment [Doc. # 45] is denied. Defendants' motion for summary judgment [Doc. # 47] is also denied except that it is granted as to a claim under R.C. § 1336.05(B). Given the court's disposition of the cross-motions, the court will set a further pretrial scheduling conference.

**THEREFORE,** for the foregoing reasons and good cause appearing,

**IT IS ORDERED** Plaintiff's Motion for Summary Judgment [Doc. # 45] is denied.

I**T IS FURTHER ORDERED** that Defendants' Motion for Summary Judgment [Doc. # 47] is also denied but granted as to a claim under R.C. § 1336.05(B).

# # #

20

20-03036-maw    Doc 48    FILED 07/01/22    ENTERED 07/01/22 16:35:20    Page 20 of 20